JOHNSON *v.* FAUCETT.

4-8752                                                    217 S. W. 2d 616

Opinion delivered February 21, 1949.

*Harvey L. Joyce* and *Glen Wing,* for appellant.

SMITH, J., Appellee recovered judgment against appellant in the sum of $150 for the alleged breach of a contract for the sale of a truck load of spinach. For the

reversal of this judgment it is insisted by appellant that the jury's verdict is inconsistent and is unsupported by the testimony.

Upon the first proposition it may be said, that appellee sued for $300, and according to the testimony in his behalf, was entitled to recover judgment for that amount. Whereas, according to the testimony on appellant's behalf, there should have been no recovery in any amount. We have held in such cases that it is not essential that verdicts of juries be consistent, and that we will determine only whether the verdict returned is sustained by sufficient, competent testimony. A very recent case so holding, which cited earlier cases to the same effect, is that of *Gazette Pub. Co. v. Jones, ante,* p. 485, 216 S. W. 2d 801. Whether there was sufficient, competent testimony to sustain the verdict presents a more serious issue, the answer to which depends upon the question whether there was a sufficient delivery to satisfy the requirements of the Uniform Sales Act, appearing as Act 428 of the Acts of 1941, the alleged contract being an oral one.

This issue of fact was submitted under instructions of which no complaint is made, and the verdict of the jury reflects the finding that there was a delivery within the meaning of the act. In answer to the questions stated we must, in accordance with our settled practice, view the testimony in the light most favorable to the verdict. When thus viewed, the testimony may be stated as follows:

Appellee grows spinach for sale on the market, and on April 29, 1947, he had a telephone conversation with one Stewart, a representative of appellant, in regard to the purchase of a truck load of spinach. Appellant was engaged in the canning business.

A price of $45 per ton was agreed upon and it was further agreed that the spinach should be delivered the following Friday. Appellee stated that the delivery would be made that day, but that it would be late in the day. Mr. Stewart responded, "All right, I will be ready

for you.'' Delivery was tendered as agreed, about 8:00 p. m. on Friday.

Appellee testified that the spinach was cut and loaded on Friday, in a truck, and that when the truck arrived at the canning plant Stewart asked, ''Have you weighed the spinach?'' And Stewart said, ''We don't need the spinach, but I told you to bring it and we are going to take it.'' Appellee further testified that the weigh-man told us he had been waiting for us. He weighed the spinach and told the truck driver to gross the weight. We drove back to the canning plant and Mr. Stewart got up on the truck, after telling the driver to remove the canvas from over the top. Mr. Stewart took a bunch of spinach off the top of the truck and took it in under the light, poured it on a table, and said, ''It's all right, its fancy spinach.'' Stewart said, drive around back to a place which he showed appellee, and put the truck back of another, which was being unloaded, take the end gates out and go to supper, the boys will unload the spinach for you.

After waiting until the truck load of spinach ahead of him was unloaded, appellee's employees took out the end gates of his truck and took the guard off the top, after which appellee and his driver went to get their supper. When they had eaten supper and returned they found the truck had not been unloaded. They asked why the truck had not been unloaded. One of the appellant's employees answered that the women had worked late the night before and they were going to quit when they had canned the spinach already unloaded. Another employee said, ''Your spinach is stemmy, ain't any good,'' and exhibited a pile thereof. Argument arose as to whether the spanich exhibited came off of appellee's truck.

Appellee's testimony was that his spinach was of fine quality and the issue as to the condition and quality of the spinach was submitted in an instruction to the following effect: A purchaser of personal property bought on order is entitled to have a reasonable opportunity to inspect the article purchased to determine whether or not

the article tendered is of the quality and quantity contracted for, and that if the spinach tendered was not of the quality and quantity ordered, to return a verdict for the defendant.

The instruction given upon the necessity and character of an acceptance of the goods to constitute delivery under the requirements of the Uniform Sales Law, *supra*, conforms to paragraph three of § 4 of that Act which reads as follows: ''There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods.''

Here the undisputed testimony is to the effect that the spinach was ordered and the price agreed upon, and according to appellee, a sample of the spinach was taken and approved. It was weighed and delivered at the point where appellant ordered, and it was turned over to appellant's employees, whose business it was to unload the spinach and for several hours it remained in appellant's exclusive possession, and remained in appellant's possession until his employees told appellee that the canning operators would not work that night, and that the spinach would not be accepted.

We think the testimony supports the finding that there was a delivery meeting the requirements of the Uniform Sales Act, and that the spinach was of a quality which appellant had contracted to buy.

After appellant refused to unload the spinach and to accept and pay for it, appellee attempted to make a sale at another cannery, but was unable to do so, and the spinach heated and spoiled. It is undisputed that appellee's loss was the total value of the spinach, which the testimony shows was greater than the verdict of the jury.

The judgment must therefore be affirmed, and it is so ordered.