KROGER GROCERY & BAKING COMPANY v. TAYLOR.

4-6481                                    157 S. W. 2d 5

Opinion delivered November 24, 1941.

*John M. Lofton, Jr.,* and *Owens, Ehrman & Mc-Haney,* for appellant.

*DuVall & Cole,* for appellee.

HUMPHREYS, J. This suit was brought in the circuit court of Grant county by appellee, a citizen of Sheridan, Arkansas, against appellant, a foreign corporation doing business in Arkansas and owning a store in Sheridan, to recover damages in the sum of $3,000 for injuries received by him while attempting to remove a washtub from the inside wall of the grocery store operated by appellant through the alleged negligence of appellant in failing to furnish appellee a safe place in which to work and to furnish a safe appliance with which to do the work, and also further negligent in that appellee's fellow-servant, George Berry, carelessly selected an insecure support for appellee to stand upon in order to remove the tub from the wall.

Appellant filed an answer denying the material allegations in the complaint and further alleged as a defense that the injury, if any, was occasioned by one of the risks ordinarily incident to the prosecution of appellee's employment and that he assumed the risk thereof.

At the conclusion of appellee's testimony (appellee was the only witness who testified) appellant asked the court to instruct a verdict for it on the ground that no liability had been shown, which request was granted, resulting in the following instructed verdict:

"We, the jury, under the instructions of the court, find for the defendant (appellant). R. J. Lites, foreman."

Subsequent to the verdict appellee filed a motion for a new trial, which was granted, and thereupon appellant prayed an appeal with the stipulation for judgment absolute in case the action of the trial court in granting appellee a new trial should be affirmed.

The first question arising for determination on this appeal is whether appellant furnished appellee a safe place to work and a safe appliance with which to do his work. According to the undisputed evidence, the place was an ordinary store building in Sheridan, Arkansas, in which a retail grocery business was conducted. Washtubs were a part of the stock to be sold. These tubs were sitting around on the floor. W. L. Phillips was the superintendent of the business. He only visited the store once or twice a week. He directed appellee and a part time helper by the name of George Berry to hang the tubs on the wall about ten feet from the floor in the large back room of the building. The tubs had handles so they were hung on nails driven in the 2 x 4's supporting the walls. In order to reach them and take them and other goods on high shelves down, appellant furnished appellee and other employees a big, heavy box that ginger ale had been shipped in to stand on when taking them down. This box was large and strong enough to support the weight of appellee and others when standing on it to take the goods down. Appellee so testified. Had appellee used the appliance (box) to stand on when attempting to take the tub down instead of a frail apple crate it

would not have given way and caused him to fall and injure himself. The allegation that appellant failed to furnish him with a safe place to work and a safe appliance with which to do the work was not supported by any evidence.

The only other allegation of negligence was that appellee's fellow-servant, George Berry, negligently substituted an apple crate for the strong box furnished by appellant to stand on, without his knowledge or consent, and when requested by George Berry to get on the box to take down the tub he did so, thinking it was the strong box, and without taking time to inspect same. He complied with Berry's request and the apple crate gave way causing him to fall and injure himself. Appellee testified that he did not discover the substituted box was an apple crate until after he had fallen. He admitted that he was employed by W. L. Phillips as manager of the store. Phillips had employed him to succeed another manager long before he employed George Berry. Phillips employed George Berry first as a meat cutter and later as a part time helper in the store to do anything that needed to be done. He was not employed as a joint manager or in any other capacity except as a part time helper in the store. Appellee had no authority to discharge Berry or to employ anyone who worked in the store. This was all done by Phillips. Appellee made out the payrolls and all orders for new stock and signed the payrolls and orders as manager of the store. He carried the key to the store himself and had general management thereof. All employees, including appellee, sold goods to customers, but the other employees accounted to appellee for the sales and receipts. The other employees made reports to appellee, but appellee made all his reports directly to appellant.

We do not think the fact that appellee sold merchandise to customers like Berry and other employees, or the fact that he had no authority to employ or discharge other employees made him a fellow-servant of Berry or other employees in the store. We do not think the general manager of a business is a fellow-servant of ordinary employees in the business. It is true that the negligence

of a fellow-servant is attributable to the master, and that the master is responsible for damages occasioned by the negligence of a fellow-servant to another, but that rule has no application unless the parties are fellow-servants, so if it be conceded that George Berry was negligent in substituting the apple crate for the big, strong, safe box to stand upon when getting down the washtub, without the consent or knowledge of appellee, and that appellee stepped on the crate thinking it was the strong box, fell and injured himself, the appellant, the master, was and is not responsible to appellee on account of George Berry's negligence. The fair interpretation of appellee's own testimony is that he was the general manager of the store and not a fellow-servant of George Berry. In this view of the testimony it becomes unnecessary to discuss the testimony relative to the manner in which appellee was injured and the extent thereof.

On account of the error of the trial court in granting appellee a new trial, the judgment is reversed and the case dismissed.

SMITH, J., (dissenting). When we view the testimony in the light most favorable to appellee, as we are required to do in determining whether it was error to direct a verdict against him, the following inferences and conclusions are fairly deducible from the testimony. Not appellee, but one Phillips, had superintending control over the local store where appellee and Berry were employed. After the stepladder ceased to be serviceable a ginger ale box was furnished to be used in its place. This box was made of heavy material and could be safely used as a substitute for the ladder, and was used with safety for that purpose. To serve a customer who wished to buy a tub, Berry went into a dark back room, and found an insecure apple box of about the same dimensions and shape as the secure box. Berry stood on this apple box, but was not tall enough to reach the tub, so he called on Taylor, who was taller, to remove the tub from the nail on which it was suspended. The boxes were so similar in size and appearance that the substitution of

one for the other would not be observed without lifting the frail box or otherwise inspecting it.

The strong box had been in daily use, and safely used, and appellee was unaware of the substitution. The trial judge, no doubt, concluded that the jury would have been warranted in finding that it was negligence for Berry to make this substitution, thereby inducing appellee to use the substituted box without notice or knowledge of its insecurity. If the testimony was sufficient to support that finding, the trial judge had the right to find that he was in error in directing a verdict against appellee and in granting a new trial.

Appellee's authority was one of the questions of fact in the case. In my opinion the trial court did not abuse its discretion in holding that a case had been made for the jury. Without intending so to do, Berry set a trap for appellee. The apple box was sufficient to support his weight, but he was not tall enough, when standing on that box, to reach the tub.

Under the circumstances I think there was a question for the jury whether the substitution of the frail box for the strong one was negligence; and that it was also a question for the jury whether appellee assumed the risk of a danger of which he was not advised and could have ascertained only after inspection, and that the jury might have found that appellee was excused from a failure to make this inspection in view of the fact that he saw Berry use the box without injury, but used it unsuccessfully only because he lacked the height and reach to remove the tub from the nail.

For the same reason the question of appellee's contributory negligence was also a question for the jury.

The question here presented is not one of preponderance of the evidence. Upon a review of previous cases we said in the recent case of *Hall* v. *W. E. Cox & Sons*, 202 Ark. 909, 154 S. W. 2d 19, that it is the duty of the trial court to set aside a verdict and grant a new trial if he concludes that the verdict is clearly against the preponderance of the evidence, and that when he had done so that action would not be reversed unless it also ap-

peared that the trial court had abused his discretion in doing so. So, the question here is whether the trial court abused its discretion. It was said in the case of *Black-wood* v. *Eads,* 98 Ark. 304, 135 S. W. 922, (to quote a headnote) that "Trial courts have large discretion in the matter of granting new trials, especially upon the weight of the evidence, and the Supreme Court will not interfere with such discretion unless it be made to appear that it was improvidently exercised." That opinion then proceeds to state when this discretion has been improvidently exercised, and it did so by referring to Webster's New International Dictionary as follows: " 'Improvidently exercised,' as used above, means thoughtlessly exercised or without due consideration. Webster, New Int. Dict.: 'Improvidently'."

In my opinion, an improvident exercise of discretion has not been shown, and I, therefore, dissent.